# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ANNA LYNN ROWE                                    CIVIL ACTION

VERSUS
                                                  NO. 16-204-RLB[1]
CAROLYN W. COLVIN
COMMISSIONER OF SOCIAL SECURITY

---

## RULING ON PLAINTIFF'S SOCIAL SECURITY APPEAL

---

Anna Lynn Rowe ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. §

405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security

Act. (R. Doc. 1).  Having found all of the procedural prerequisites met (Tr. 1-6), the Court has

properly reviewed Plaintiff's appeal.  *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The

Appeals Council's decision, or the decision of the administrative law judge if the request for

review is denied, is binding unless you… file an action in Federal district court…").  For the

reasons given below, the Court **ORDERS** that the decision of the Commissioner is **AFFIRMED**

and Plaintiff's appeal is **DISMISSED with prejudice**.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and supplemental security

income on May 31, 2013 alleging that she became disabled on April 1, 2013 because of a

disabling condition, namely arthritis, diabetes, and thyroid problems. (Tr. 300).  Plaintiff's

---

[1] Because both parties consented to proceed before a United States Magistrate Judge (R. Doc. 4), the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c)(1).

application was denied by an Administrative Law Judge ("ALJ"), who first held an administrative hearing (Tr. 87-132) before issuing an unfavorable decision on January 29, 2015. (Tr. 69-86).  Plaintiff's April 1, 2015 request for review of the ALJ's decision (Tr. 50-51) was denied by the Appeals Council on February 18, 2016. (Tr. 1-7).  The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  *See* 20 C.F.R. § 404.981.

## II.     STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)).  The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted).  Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.,*

*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20

C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff had met the insured status requirements of the Social Security Act through June 30, 2013

2. Plaintiff had not engaged in substantial gainful activity since April 1, 2008.

3. Plaintiff suffered from the following severe impairments: degenerative disc disease; rheumatoid arthritis; and obesity.

4. Plaintiff did not meet or medically equal any listed impairment.

5. Plaintiff retained the residual functional capacity to perform light work except she can never climb ladders, ropes, and scaffolds, but can occasionally perform all other postural; she must avoid concentrated exposure to extremes of heat and humidity; she must avoid concentrated exposure to heights and moving machinery.

6. Plaintiff was able to perform past relevant work as an administrative assistant, clerical worker, and housekeeper.

7. Plaintiff had not been under a disability through the date of the decision.

(Tr. 74-81).

**IV.    DISCUSSION**

Plaintiff raises the following five assignments of error: (1) the ALJ's quotation of two separate, inconsistent RFC assessments; (2) the weight given to the opinions of two treating medical providers; (3) the ALJ's credibility determination of the claimant; (4) the weight given to certain consulting physicians regarding claimant's lupus, depression, and anxiety; and (5) the alleged failure to analyze the claims under SSR 96-8p. (R. Doc. 17 at 4).

These categorizations by Plaintiff, however, do not necessarily reflect the full substance of each argument.  Therefore, in a departure from the organizational scheme employed by Plaintiff in her briefing, the Court will address the substance of each of Plaintiff's arguments within the framework of the 5-step analysis.  Substantively, the Plaintiff's arguments fall into three general categories.  First, Plaintiff's brief contains similar arguments in various sections that are not specific to any particular step in the process.  This includes Plaintiff's arguments regarding the weight given to various medical providers throughout the ALJ's decision, the ALJ's credibility assessment of Plaintiff, and the ALJ's consideration of the testimony of a lay witness. Second, Plaintiff argues that the ALJ committed reversible errors at Step Two of the analysis.  And finally, Plaintiff submits that the ALJ committed reversible errors in his RFC assessment of Plaintiff, including with regard to SSR 96-8p.  Plaintiff's arguments will be addressed within this framework.

**A.    Weight Given to Medical Providers**

At various points in her briefing, Plaintiff argues that the ALJ erred in the weight given to certain medical providers.  First, Plaintiff argues that the medical evidence of Dr. Charles Genovese (Dr. Genovese) and Nurse Practitioner Melinda Balado (NP Balado) was not properly weighed pursuant to 20 C.F.R. § 404.1527(c) in the event Plaintiff was limited to an RFC of light

work with limitations. (R. Doc. 17 at 6). Next, Plaintiff dedicates a section of her briefing to the weight given to Dr. Genovese and NP Balado, arguing that the ALJ did not give the proper weight to the functional limitations in the reports of these providers, and did not properly examine the longitudinal relationship between Plaintiff and these providers. (R. Doc. 17 at 8-13). Plaintiff then argues that, had the opinions of Dr. Genovese and NP Balado been considered in the fashion Plaintiff suggests is proper, the testimony of Plaintiff would have been more consistent with the (properly-weighed) medical evidence, and the ALJ would not have made factually inaccurate statements with regard to the existence of a prescription for an assistive device and the absence or presence of a diagnosed radiculopathy. (R. Doc. 17 at 16). Lastly, Plaintiff argues that improper weight was given to Dr. Genovese and NP Balado on the issues of depression and anxiety, and the existence of a lupus diagnosis. (R. Doc. 17 at 20).

Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician). "Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d at 453.[2]  The ALJ did not provide such a "detailed analysis."

---

[2] Those criteria, currently found in sub-part (c)(2) of the statute, provide that the ALJ consider: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) consistency of the treating physician's opinion with the record as a whole; (5) whether the opinion is that of a specialist; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2).

The ALJ, however, is not required to consider each of the six factors set out in *Newton* when "'there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.'" *Walker v. Barnhart*, 158 F.App'x 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458). Thus, the ALJ's decision to reject a treating physician's opinion must be supported by substantial, contradictory, first-hand evidence from another physician. If the decision is so supported, the ALJ is "not required to go through all six steps in *Newton* [because] . . . the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his." *Cain v. Barnhart*, 193 F.App'x 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 F.App'x at 534). An ALJ is free to discredit the opinion of a treating physician when it is contradicted by another physician — examining or not. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (ALJ may reject a treating physician's opinion in favor of an examining physician where the evidence supports a contrary conclusion). "[A] specialist's opinion is afforded greater weight than a generalist's." *Beasley v. Barnhart*, 191 F.App'x 331, 334 (5th Cir. 2006) (citing *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). Lastly, "a treating physician's opinion may be given little or no weight 'when the evidence supports a contrary conclusion.'" *Beasley*, 191 F.App'x at 334 (citing *Newton*, 209 F.3d at 455).

Here, the ALJ stated that Dr. Genovese's opinion was given "little weight" because it "is contrary to that of medical specialists and with the medical records." (Tr. 80). NP Balado's opinion was given little weight by the ALJ "[f]or similar reasons." (Tr. 80).[3] The only specific

---

[3] While a nurse practitioner is not an acceptable medical source under the Regulations, an ALJ must still consider opinions from non-acceptable medical sources. *See Boudreaux v. Soc. Sec. Admin.*, 2014 WL 7339022, at *2 (E.D. La. Dec. 19, 2014) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c), and SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006)). The ALJ gave no indication that she was discounting NP Balado's opinion on the basis of NP Balado being a nurse practitioner, however. Rather, the ALJ gave "little weight" to NP Balado's opinion for the same reasons she gave little weight to Dr. Genovese's opinion. (Tr. 80).

substantive reason stated by the ALJ for Dr. Genovese and NP Balado's opinions being contrary to that of medical specialists and the medical records is that "lupus was ruled out by rheumatology and lab results, [and] testing for rheumatoid arthritis has been described as equivocal at best." (Tr. 80). It is significant to note, however, that Dr. Johnson's opinion also references diagnoses of arthritis and lupus, but his opinion was given "great weight." (Tr. 80). Further, where the only other diagnoses given by Dr. Johnson are diabetes and thyroid disease (Tr. 394), Dr. Genovese and NP Balado note numerous other diagnoses, including chronic recurrent staph infection and kidney stones (Tr. 135), and discitis, degenerative disc disease, diabetes, hypertension, and anxiety (Tr. 136). The ALJ does not, however, base her determination on any of these other diagnoses.

The only practical difference between Dr. Johnson's opinion and the opinions of Dr. Genovese and NP Balado then becomes each of those providers' determinations with regard to any functional limitations Plaintiff suffers as a result of her diagnoses. Whereas Dr. Genovese and NP Balado concluded that Plaintiff has "marked" or "severe" limitations in all aspects of functioning, Dr. Johnson noted that Plaintiff was able to perform household activities, dress and feed herself independently, lift 10 pounds, sit 10 minutes, stand 20 minutes, walk 70 feet, had a normal range of motion in her neck, normal strength in her extremities, her hands and arm function, her grip, pinch, grasp, handling, and fingering were all 5+/5+ bilaterally, heel-to-toe walk was normal, no assistive device was needed upon ambulation, pushing, pulling, and reaching were normal, crouching, squatting, and stooping were normal, and she was able to climb on and off the exam table independently. (Tr. 394-398).

It is illogical to conclude that Dr. Johnson's opinion is entitled to more weight than the opinions of Dr. Genovese and NP Balado on the basis of questionable diagnoses of lupus and

arthritis where all three providers' opinions contain these diagnoses. Put another way, if the only basis for the weight given to the opinions of Dr. Genovese and NP Balado is that lupus and arthritis are questionable diagnoses, Dr. Johnson's opinion would be entitled to the exact same weight as he similarly notes diagnoses of lupus and arthritis.

Insofar as the ALJ assigned different weight to these opinions on the grounds of questionable diagnoses of lupus and arthritis, the ALJ erred. "[I]t is reversible error to misstate the record when providing reasons for giving a treating physician's opinion less than substantial weight." *Ellis v. Comm'r of Soc. Sec.*, 2017 WL 1282867, at *4 (M.D. Fla. Apr. 6, 2017). That is to say, "[t]o the extent the ALJ's decision was based on this clearly erroneous finding of fact, it is not supported by substantial evidence." *Somogy v. Comm'r of Soc. Sec.*, 366 F.App'x 56, 63 (11th Cir. 2010). *See also Grosso v. Colvin*, 2016 WL 4916968, at *10 (S.D.N.Y. Sept. 14, 2016), *report and recommendation adopted*, 2016 WL 6269604 (S.D.N.Y. Oct. 25, 2016) (finding reversible error and remanding "to allow the ALJ to appropriately consider the opinions of these two consultative examiners and to accord them proper weight in the ALJ's application of the treating physician rule.").

"Nevertheless, the harmless error doctrine applies in Social Security disability cases, and procedural perfection is not required as long as the claimant's substantial rights have not been affected by an ALJ's error." *Moore v. Astrue*, 2012 WL 1719183, at *4 (N.D. Tex. May 16, 2012). In this vein, the ALJ also noted, in ascribing little weight to the opinions of Dr. Genovese and NP Balado, that Dr. Genovese's opinion "is contrary to that of medical specialists and the medical records." (Tr. 80). Because the Court finds substantial evidence supports the weight given to the providers based on the ALJ's finding that the opinions of Dr. Genovese and NP Balado were "contrary to that of medical specialists and the medical records," any error by

the ALJ in ascribing weight to medical providers on the basis of lupus and arthritis diagnoses constitutes harmless error.

Dr. Johnson performed a consultative examination of Plaintiff on March 19, 2014. (Tr. 394-399). He notes that Plaintiff's past medical history was "[s]ignificant for diabetes, hypothyroidism, arthritis, and lupus" and notes past diagnoses of same. (Tr. 394). Dr. Johnson was of the opinion, based upon his examination of Plaintiff and his review of her medical records, that Plaintiff was able to dress and feed herself, and drive. (Tr. 394). He noted that she could lift 10 pounds, sit 10 minutes, stand 20 minutes, and walk 70 feet. (Tr. 395). He further noted that Plaintiff's appearance was good, she followed commands appropriately, and her long and short term memory were normal. (Tr. 395). Dr. Johnson noted tenderness in Plaintiff's lumbar region and flexion "limited to 70 degrees." (Tr. 397). He goes on to enumerate her other ranges of motion, but there is no indication of whether those ranges are abnormal in the same way as he references Plaintiff's lumbar flexion as "limited." (Tr. 397). In his summary, however, Dr. Johnson indicates that "there is normal range of motion and strength in the patient's neck, upper extremities, and lower extremities bilaterally with no joint tenderness, swelling, redness, or warmth." (Tr. 397). In his functional assessment, Dr. Johnson concludes the following:

> Pushing, pulling, and reaching are normal. Crouching, squatting, and stooping are normal. The patient is able to climb on and off the exam table independently and is able to dress and undress herself independently.

(Tr. 398).

He also reports that the "use of an assistive device is not needed on ambulation." (Tr. 398). Plaintiff argues in her Reply that a walker was "prescribed and delivered to Ms. Rowe during her stay at Our Lady of the Lake Hospital in Baton Rouge." (R. Doc. 20 at 1). The record

reflects that a rolling walker was delivered to the hospital. (Tr. 951). The record does not, however, reflect that a walker was *prescribed*, nor does the record provide any evidence that Plaintiff took the walker home with her after discharge, either by recommendation or prescription. Additionally, while the Court notes that Leslie Wood, a nurse practitioner, notated "Please supply patient with a 4 prong walking cane" on a record from Malinda's Patient Care dated June 9, 2015, the ALJ's decision was rendered January 29, 2015. (Tr. 39).[4]

In contrast, Dr. Genovese and NP Balado completed checkbox-types forms wherein they selected "marked" and "severe" limitations in Plaintiff's ability to function. (Tr. 135, 137). Dr. Genovese's October 16, 2014 Medical Report notes that Plaintiff has been diagnosed and treated for chronic recurrent staph infection in her spine, SLE (lupus) with chronic joint pain and immune suppression due to medication, and recurrent kidney stones. (Tr. 135). Whereas Dr. Johnson found that Plaintiff had no problems with crouching, squatting, stooping, or climbing, Dr. Genovese and NP Balado select that Plaintiff can "never" engage in these activities. (Tr. 135, 137). There is, however, no indication in any of the medical records of Plaintiff's inability to climb, crawl, stoop, or kneel. Plaintiff consistently complains of pain, but the records do not support Dr. Genovese and NP Balado's opinions that she is unable to engage in these activities.

In her October 25, 2013 Field Office Disability Report, Plaintiff was reported to be "very polite, neatly groomed," and to have no difficulty with hearing, reading, breathing,

---

[4] Similarly, Plaintiff's suggestion that the ALJ erred in failing to consider a provider's request for an assistive device dated 5 months after the ALJ's decision was rendered is an impossibility. The Appeals Council properly noted that the ALJ "decided [Plaintiff's] case through January 29, 2015" and that the "new information is about a later time" therefore not affecting "the decision about whether you were disabled beginning on or before January 29, 2015." (Tr. 2). The Appeals Council properly advised Plaintiff that her recourse for the consideration of new information after the ALJ's decision is a new application, wherein it stated, "[i]f you want us to consider whether you were disabled after January 29, 2015, you need to apply again." (Tr. 2). *See* 20 C.F.R. § 404.970(c) ("If you submit additional evidence *that does not relate to the period on or before the date of the administrative law judge hearing decision* as required in paragraph (a)(5) of this section… the Appeals Council will send you a notice that explains why it did not accept the additional evidence and advises you of your right to file a new application.") (Emphasis added).

understanding, coherency, concentrating, talking, answering, sitting, standing, walking, seeing, using hands, or writing. (Tr. 297). On June 11, 2013, Plaintiff attended an appointment with Patient's First Care, LLC in order to obtain lab results and had "no further complaints." (Tr. 386). At a September 30, 2013 appointment with Dr. Malik Spady, he notes that Plaintiff needs help with activities of daily living when she has an "arthritis flare up," but there is no indication of the frequency of those flare ups. Ultimately, there are many recorded instances of various types of pain suffered by Plaintiff, but very little in the way of any limitations caused by that pain, which negates the ability to find substantial evidence supporting the "marked" and "severe" determinations made by Dr. Genovese and NP Balado.

Additionally, there are several instances where Plaintiff complained of severe pain, but ambulated without difficulty. On April 4, 2014, for example, Plaintiff reported to the North Oaks Medical Center (NOMC) emergency department complaining of pain in her shoulder and hip, stating she was able to walk but it caused her pain, and complained of swelling in her right leg and ankle. (Tr. 810). She apparently reported both that she ran out of her pain medications that day, and that she still had pain medication remaining. (Tr. 810). The provider noted that, although she indicated she had pain in her right hip, Plaintiff "was observed to have a normal gait, lift her leg off the bed without assistance, has normal dorsalis pedis and posterior tibial pulses." (Tr. 812). Then, after being offered an injection of Toradol, x-rays, and a leg ultrasound, Plaintiff apparently left the emergency department against medical advice, stating that she "was here for a pain medication." (Tr. 813). Upon leaving, Plaintiff was observed to have "walked out of the room." (Tr. 813). Again, on June 17, 2014, Plaintiff reported to the NOMC emergency department complaining of weakness and numbness in her arm. (Tr. 847). She was observed to have ambulated to the bathroom to collect urine. (Tr. 854). The objective

medical evidence does not support a finding of an inability to ambulate, or any significant functional limitation in Plaintiff's ability to ambulate.

In her Reply, Plaintiff argues that the results of an objective medical test "confirm[ed] a radiculopathy, that matched her complaints relative to distribution of pain and limitation of function." (R. Doc. 20 at 2). The Court disagrees. While Plaintiff consistently complained of pain, the record is substantially devoid of any complaints of limitation of function, and similarly substantially devoid of any recordation of limitation of function by the providers who assessed her. "The mere presence of some impairment is not disabling per se. Plaintiff must show that [he] was so functionally impaired by [his diagnosed conditions] that [he] was precluded from engaging in any substantial gainful activity." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). In other words, a finding of an impairment is insufficient without a corollary presence of a limitation in the ability to function. Thus, Plaintiff's diagnosis of radiculopathy is insufficient to support a finding that the ALJ's opinion is not supported by substantial evidence.

Plaintiff is quick to point out various diagnoses in her Reply (R. Doc. 20), but the fact remains that there is an absence of evidence in the record supporting the *effect* these diagnoses had or have on the Plaintiff's residual functional capacity, which absence provides substantial evidence for the ALJ's conclusion that the opinions of Dr. Genovese and NP Balado warranted little weight for their unsupported "marked" and "severe" limitations, and Dr. Johnson's opinion, making specific findings with regard to Plaintiff's ability to function, is significantly more supported by the objective medical evidence. This is further supported by the Disability Determination Explanation completed by the SSA, wherein it was noted that Plaintiff's conditions "are treated with medications and have not caused severe functional limitations. Not severe physically." (Tr. 185). The SSA's Disability Determination Explanation also notes that

Plaintiff's "conditions are severe in nature but do not cause functional limitations so severe to prevent working." (Tr. 187). Accordingly, for the foregoing reasons, substantial evidence supports the little weight given to the opinions of Dr. Genovese and NP Balado, the great weight given to the opinion of Dr. Johnson, and the ALJ's conclusion that the "evidence does not support that claimant's impairments would prevent her from performing a limited range of light work." (Tr. 80). Thus, the ALJ's decision will not be reversed on this ground.

### B.     ALJ's Credibility Determination

Plaintiff also argues that the ALJ made an inaccurate assessment of credibility because she used an inaccurate characterization and recitation of the evidence. (R. Doc. 17 at 4). Plaintiff essentially suggests that because the ALJ committed alleged errors regarding certain factual determinations, the ALJ necessarily erred in her credibility determination of Plaintiff. In other words, Plaintiff argues that if certain findings of the ALJ had been different, Plaintiff would have been deemed more credible because her testimony would have been more consistent without the incorrect findings. In support of this argument, Plaintiff asserts that the ALJ erred in giving great weight to Dr. Johnson's report because the ALJ was factually incorrect in stating that (1) "lupus was ruled out by rheumatology lab results" (Tr. 80); (2) there was no prescription for an assistive device (Tr. 80); and (3) "[t]he record does not establish deficits in lower body strength, radiculopathy or joint disturbance that would impede ambulation" (Tr. 80). Plaintiff concludes that, because the opinions of Dr. Genovese and NP Balado "were not properly disregarded" thereby making Plaintiff's testimony consistent with the evidence in the record, and because the ALJ allegedly made factual errors, the ALJ made an erroneous assessment of Plaintiff's credibility.

The Commissioner responds that the record contains several indications that Plaintiff did not have lupus, disputes the timeline regarding any need by Plaintiff of an assistive device as well as the correlation between test results and their effect on Plaintiff's functionality. (R. Doc. 19 at 10). In her decision, the ALJ noted that she "considered the claimant's allegations of pain and dysfunction as a result of the medically determinable impairments," citing SSR 96-7p, 1996 WL 374186 (July 2, 1996), and found that Plaintiff's allegations were "not credible to the extent alleged." (Tr. 77).

There is substantial evidence in the record supporting the alleged errors upon which the Plaintiff's credibility argument is based, including (1) the weight given to the opinions of Dr. Johnson, Dr. Genovese, and NP Balado (discussed above); (2) the questionable nature of a lupus diagnosis; and (3) a lack of functional limitations as a result of Plaintiff's impairments, including lower body strength, radiculopathy, and joint disturbance. Because there is substantial evidence supporting the foregoing, Plaintiff's argument regarding the ALJ's assessment of her credibility necessarily fails as her argument rests entirely on these errors.

Regarding the diagnosis of lupus, as the Commissioner points out, the record contains numerous instances calling that diagnosis into question, if not fully ruling it out. Dr. Grewal saw Plaintiff on September 30, 2014 for a follow up on Plaintiff's labs. (Tr. 515). He notes an "abnormal APLA and + ANA" and states it is "less likely to be SLE [systemic lupus erythematosus]." (Tr. 517-518). During an inpatient stay from June 20, 2014 to June 23, 2014, Dr. Winkler notes that Plaintiff was seen by Dr. Robledo on June 22, 2014 and notes "doubt that it is lupus." (Tr. 866). Additional notes from that stay reflect the assessment made by Dr. Gauthier that Plaintiff "met no other clinical or laboratory criteria for an active tissue disease and

that she does not have systemic lupus or any other connective tissue disease." (Tr. 866). In the discharge diagnoses, Dr. Winkler records "[n]o evidence of lupus nephritis or lupus." (Tr. 866).

On the other side, while there are several references to lupus in the medical records, Plaintiff can point to no definitive affirmative diagnosis of lupus. The first appearance of lupus in the medical records is on April 7, 2013, wherein Plaintiff reported to NOMC, which noted an Arrival Complaint of "lupus." (Tr. 671). There is no originating diagnosis of lupus, however. Shortly before the April 7, 2013 visit to NOMC, on December 28, 2012 (Tr. 653-654) and February 6, 2013 (Tr. 658-663), Plaintiff reported to NOMC with complaints of pain, but those visits make no mention of a previous or current diagnosis of lupus. On December 28, 2012, Plaintiff's past medical history is noted as hypertension and gout (Tr. 653) and her diagnosis at that time was gouty arthritis (Tr. 653). On February 6, 2013, Plaintiff's past medical history was noted as high cholesterol, hypertension, Diabetes Mellitus, and gout (Tr. 658) and her diagnosis at that time was joint pain noting "needs arthritis workup" (Tr. 662).

The only records from October 2013, which Dr. Johnson suggests was when Plaintiff was diagnosed with lupus (Tr. 394), are from appointments at Patient's First Care, LLC and NOMC. At the October 23, 2013 appointment with Patient's First Care, LLC, there is no indication of lupus. The reason for Plaintiff's visit was "med refill" (Tr. 388), and her noted problems included rheumatoid arthritis but not lupus (Tr. 389). On October 30, 2013, Plaintiff was admitted to NOMC with complaints of weakness and dizziness, and the records note that lupus was "present on admission" and appears as part of the discharge diagnosis, but there is similarly no evidence of an originating diagnosis. Furthermore, the lion's share of references to lupus seem to be noted from self-reporting or past medical histories. For example, at a May 16, 2013 appointment with Patient's First Care, LLC, Plaintiff's chief complaints were "lupus and med

refills; Blood Work; RX Refill." (Tr. 383). Her "Problems" noted from that visit, however, were hypothyroidism, fatigue, diabetes type II not stated as uncontrolled, and osteoarthrosis." (Tr. 384).

At the very least, there is no initial diagnosis of lupus and, although lupus appears in several instances, the accuracy of that diagnosis is questionable, if not completely ruled out by subsequent test results and physician's opinions. The burden of proving the existence of a medically determinable impairment, part of the analysis at the second step, is on the Plaintiff. *See Laurent v. Astrue*, 366 F. App'x 559, 561 (5th Cir. 2010) ("The claimant carries the burden of proof in the first four steps of the analysis."). Insofar as Plaintiff argues that the opinions of Dr. Genovese and NP Balado were improperly disregarded due to the presence of a lupus diagnosis, the Court finds that there is substantial evidence in the record to support the ALJ's finding of an "unsubstantiated diagnosis of lupus," as well as substantial evidence supporting the ALJ's conclusion that "the evidence does not support her allegations of severely restricted functions." (Tr. 80).

The same is true with regard to Plaintiff's argument regarding the use of an assistive device. Plaintiff essentially argues that because the ALJ erred in concluding there was no prescription for an assistive device, the ALJ necessarily erred in her credibility determination of Plaintiff. Plaintiff argues in her Reply that a walker was "prescribed and delivered to Ms. Rowe during her stay at Our Lady of the Lake Hospital in Baton Rouge." (R. Doc. 20 at 1). The record reflects that a rolling walker was delivered to the hospital. (Tr. 951). The record does not, however, reflect that a walker was *prescribed*, nor does the record provide any evidence that Plaintiff took the walker home with her after discharge, either by recommendation or prescription. Additionally, while the Court notes that Leslie Wood, a nurse practitioner, notated

"Please supply patient with a 4 prong walking cane" on a record from Malinda's Patient Care dated June 9, 2015, the ALJ's decision was rendered January 29, 2015. (Tr. 39).[5]

Plaintiff's third assertion underlying her credibility argument is that the ALJ erred in finding that there was not a diagnosed radiculopathy. Here, the Plaintiff misreads the ALJ's decision. The ALJ states that "[t]he record does not establish deficits in lower body strength, radiculopathy or joint disturbance *that would impede ambulation*." (Tr. 80) (emphasis added). The ALJ's finding was not a lack of a diagnosed radiculopathy; the ALJ's finding was that any radiculopathy was not shown to impede ambulation. In an EMG/Nerve Conduction Report dated April 23, 2014 (Tr. 485-487), Dr. Beaucoudray notes a finding of "Right L4, L5 Radiculopathy." (Tr. 487). There is no finding, however, of any functional limitation resulting from that diagnosis, either in the EMG/Nerve Conduction Report, or other medical records. In fact, in a follow up dated April 24, 2014, a day after the EMG/Nerve Conduction Report, Dr. Beaucoudray himself notes that "Patient continues with an antalgic gait, no ataxia, no unsteadiness and no assistive device was needed for ambulation or standing." (Tr. 482).

Other evidence in the record supports a finding of no imposition on ambulation as a result of the radiculopathy. On April 14, 2014, Plaintiff checked in to the NOMC emergency department complaining of pain in her right shoulder, elbow and hip as a result of a fall. (Tr. 810). The records indicate that although she complained of pain in her right hip, Plaintiff "was observed to have a normal gait, [and] lift her leg off the bed without assistance." (Tr. 812). Upon leaving the facility against medical advice (AMA), Plaintiff apparently requested a wheelchair, and when she was offered a large wheelchair (the only one available according to the account), Plaintiff refused the wheelchair and was "ambulatory from the ED with steady gait. No signs or

---

[5] *See* n. 4, *infra*.

symptoms of distress." (Tr. 814). During a June 17, 2014 visit to the NOMC emergency department, the RN's records note "Patient ambulating to bathroom to collect urine." (Tr. 854). Dr. Johnson's exam results report "normal range of motion and strength in the upper extremities and lower extremities bilaterally with no joint tenderness, swelling, redness, or warmth." (Tr. 397). Dr. Beaucoudray notes, from a July 22, 2014 exam, "5/5 normal muscle strength – all muscles. 4/5 reduced muscle strength – Note: right dorsiflexion." (Tr. 479). Overall, the vast majority of the records reflect normal range of motion, strength, and ability to ambulate.

Accordingly, insofar as Plaintiff argues that the ALJ opinion "made at least two factually inaccurate statements which were used as a basis to diminish Claimant's credibility (absence of a prescription for an assistive device, and absence of a diagnosed radiculopathy)," the Court finds there is substantial evidence in the record to support the ALJ's conclusion that there was an absence of a prescription for an assistive device, and, while there is a diagnosed radiculopathy, there is a notable absence of objective medical records regarding any limitations resulting from that diagnosis. Because the Court finds that there is substantial evidence in the record to support the ALJ's factual findings with regard to lupus and the need for an assistive device, and a lack of evidence reflecting functional limitations caused by the radiculopathy, the premises upon which Plaintiff rests her credibility argument, that argument necessarily fails and the ALJ's decision will not be overturned on this ground.

### C. Testimony of Lay Witness

Plaintiff also argues that it was error for the ALJ "to completely omit in her opinion that a lay witness had appeared to testify" and that a "remand should be conducted for an assessment of the credibility and weigh[t] accorded to that witness." (R. Doc. 17 at 17). The Commissioner suggests that an ALJ is not required to explain the weight given to "other sources" in her

decision; that the lay witness's testimony was essentially the same as Plaintiff's and, therefore, the ALJ's discounting of Plaintiff's credibility was similarly applicable; and that, even were the ALJ to have committed an error, that error was harmless. (R. Doc. 19 at 10-11). The Commissioner argues that, while the ALJ is required to consider opinions from other sources, she is not required to explain the weight given to the opinions from other sources. Further, the Commissioner suggests that any failure of the ALJ to properly evaluate the testimony of the lay witness amounts to harmless error. (R. Doc. 19 at 11).

Ms. Gauthier, the lay witness at the administrative hearing, testified that she is a friend of Plaintiff, and that she helps Plaintiff on weekdays from when Plaintiff's daughter leaves for school until 2:30 or 3:00 in the afternoon, when her daughter gets home. (Tr. 124). Regarding the type of assistance she provides, Ms. Gauthier testified that she ensures Plaintiff gets her medicine, a bath if necessary, and food if she needs food. (Tr. 124). She testified that she does not believe Plaintiff is capable of managing her own medications as prescribed as a result of a single incident of a drop in blood pressure that she believes resulted from Plaintiff taking more medication than she was supposed to. (Tr. 125-126).

"Lay testimony as to a claimant's *symptoms* is competent evidence which the Secretary must take into account … unless he expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" *Carroll ex rel. Charleston v. Barnhart*, 2005 WL 1719225, at *5 (W.D. Tex. July 22, 2005) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). No party disputes that the ALJ did not reference or discuss the testimony of Ms. Gauthier anywhere in the written decision. This was error.

"However, when an ALJ makes a procedural error in denying disability benefits, 'we must still determine whether [the] error was harmless.'" *Alexander v. Astrue*, 412 F.App'x 719,

722 (5th Cir. 2011) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). Courts have found that, where the testimony of a lay witness was duplicative of other testimony or evidence considered by an ALJ, and ALJ's failure to analyze the testimony of a lay witness is harmless and will not serve as a basis for remand. *See, e.g., Wallis v. Colvin*, 608 F.App'x 489 (9th Cir. 2015) (citing *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) ("The ALJ's failure to discuss the lay testimony is, however, harmless because the testimony describes the same limitations as Wallis' own testimony, and the ALJ's valid reasons for rejecting Wallis' testimony apply with equal force to the lay testimony.").

A review of Ms. Gauthier's testimony at the administrative hearing as compared with Plaintiff's own testimony, reveals that Ms. Gauthier's testimony adds nothing new to the analysis as each assertion made by Ms. Gauthier was also made by Plaintiff. For example, Ms. Gauthier testified that she arrives to help Plaintiff when Plaintiff's daughter leaves for school until about 2:30 or 3:00 Monday through Friday. (Tr. 124). Plaintiff states the same. (Tr. 93, 94). Ms. Gauthier testified that she ensures Plaintiff gets her medicine, and helps with a bath and food, if necessary. (Tr. 124). Plaintiff again states the same. (Tr. 93-94). Ms. Gauthier describes an incident where Plaintiff apparently took too much of a medication, resulting in a drop in blood pressure and EMS was called. (Tr. 125-126). Plaintiff relays the same incident. (Tr. 116).

There is nothing in Ms. Gauthier's testimony that is not duplicated in the testimony of Plaintiff. As the undersigned concluded above that there was substantial evidence in the record supporting the ALJ's assessment of Plaintiff's credibility, it follows that the ALJ's failure to address the testimony of Ms. Gauthier was harmless, and the ALJ's decision will not be reversed on this ground.

### D.    **Step Two Findings of Severe Impairments**

Plaintiff asserts that "at step two of the ALJ's evaluation," the ALJ failed to consider lupus, chronic anxiety and depression, osteoarthritis, chronic recurrent staph infection, chronic joint pain, and immune suppression due to medication as severe impairments. (R. Doc. 17 at 17). In support of this argument, Plaintiff suggests that the ALJ either considered a diagnosis and erred in not classifying it as severe (lupus, depression, and anxiety), or erred in not considering a diagnosis at all (osteoarthritis, chronic recurrent staph infection, chronic joint pain, and immune suppression due to medication). (R. Doc. 17 at 17 n. 33).[6] The Commissioner essentially responds that the ALJ properly found that Plaintiff's lupus, depression, and anxiety were not severe (R. Doc. 19 at 12-13), but does not address Plaintiff's arguments with regard to osteoarthritis, chronic recurrent staph infection, chronic joint pain, and immune suppression due to medication.

The burden rests on the Plaintiff at Step Two, but that burden is de minimis. *See Calderwood v. Colvin*, 2016 WL 1077956, at *9 (E.D. Tex. Mar. 18, 2016) (citing *Stone v. Heckler*, 752 F.2d 1099, 1103-04 (5th Cir. 1985)) ("Step two's 'severe impairment' analysis is a low burden for the Plaintiff."). In *Stone*, 752 F.2d at 1103-04, the Fifth Circuit opined that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." On the other hand, the Regulations define a severe impairment as "when its magnitude is sufficient

---

[6] To the extent Plaintiff suggests the ALJ erred in at his Step Two classification of impairments as severe or non-severe as a result of improper weight given to providers, those arguments have been addressed in the preceding sections. Based upon the Court's conclusion herein, that argument has no effect on the outcome of the Step Two analysis considering the ALJ did, in fact, find at least one severe impairment. *See Parker v. Comm'r of the Soc. Sec.*, 2014 WL 1239776, at *7 (M.D. La. Mar. 25, 2014) (citing *McCrea*, 370 F.3d 357, 362 (3d Cir. 2004) ("Rather, the Court's[sic] acknowledges that the ALJ's 'observations' regarding claimant's credibility and the weight assigned to certain physicians' opinions 'may or may not be relevant in later steps of the sequential analysis... but they certainly do not carry the day at step two.'")).

to limit significantly an individual's physical or mental ability to do basic work activities." *Henson v. Barnhart*, 373 F. Supp. 2d 674, 682 (E.D. Tex. 2005) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). "A physical or mental impairment is in turn defined as 'an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.'" *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (citing 42 U.S.C. § 423(d)(3)).

At the outset, while the ALJ does not specifically cite the *Stone* decision, she does reference the proper standard wherein she states that "[a]n impairment or combination of impairments is deemed 'non-severe' when it is no more than a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." (Tr. 75). In this case, the ALJ considered the following conditions at Step Two: degenerative disc disease (Tr. 74); rheumatoid arthritis (Tr. 74); obesity (Tr. 74); carpal tunnel syndrome of the right wrist (Tr. 75); depression and, broadly, emotional deficits/mental impairments (Tr. 75); diabetes (Tr. 75); hypertension (Tr. 75); thyroid disorder (Tr. 75); sleep apnea (Tr. 75); osteopenia (Tr. 75); sepsis (Tr. 76); and lupus (Tr. 76). After consideration, the ALJ found Plaintiff's degenerative disc disease, rheumatoid arthritis, and obesity to be severe impairments within the meaning of the Regulations. (Tr. 74).

The ALJ's findings subsequent to her Step Two analysis are also relevant to the discussion. This is because, where an ALJ commits an error at Step Two of the sequential process, such an error is harmless where she progresses beyond Step Two and considers all limitations supported by the record. It has been held, in *Dise v. U.S. Com'r of Soc. Sec.*, 2015 WL 566862, at *7-9 (W.D. La. Feb. 10, 2015), *aff'd sub nom. Dise v. Colvin*, 630 F.App'x 322

(5th Cir. 2015), that where an "ALJ considered all of plaintiff's alleged medically determinable impairments in his opinion," "any failure to make a particular finding that [certain impairments] were non-severe at Step 2 of the sequential evaluation was harmless." There, the claimant argued that, although the medical evidence supported the presences of four medically determinable impairments… the ALJ, at the second step of the evaluation process, only found oppositional defiant disorder to be severe." *Dise*, 2015 WL 566862 at *7. The *Dise* court went on to state the following:

> While the ALJ may not have considered the three other medically determinable impairments from which plaintiff claims she suffered at [Step Two] in the sequential process, his opinion reflects that these impairments were considered in his overall assessment of plaintiff's disability. Finding that plaintiff suffered from at least one severe impairment, the ALJ continued on to consider the remaining steps of the sequential process and, in doing so, discussed the evidence relating to plaintiff's impairments, including those that were not specifically mentioned at Step 2.

2015 WL 566862 at *8. Also instructive on this point is the case of *Cagle v. Colvin*, 2013 WL 2105473, at *5-8 (S.D. Tex. May 14, 2013). There, the court found that, where the ALJ erred when it found depression and anxiety to be non-severe at Step Two, that error was harmless because he found at least one severe impairment at Step Two and considered the limiting effects of all other non-severe impairments at a later stage in the process. *Cagle*, 2013 WL 2105473 at *5.

In her RFC assessment and Step Four analysis, the ALJ first notes that she "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." (Tr. 76). The ALJ then goes on to specifically consider the following: arthritic and thyroid problems (Tr. 77); pain and dysfunction as a result of medically determinable impairments (Tr. 77); lupus (Tr. 77); degenerative disc disease (Tr. 77); rheumatoid arthritis (Tr. 77); obesity (Tr. 77); lumbar radiculopathy as the result of

degenerative disc disease (Tr. 77); acute back pain (Tr. 77); weakness and joint pain diagnosed as gout (Tr. 77); heel spur (Tr. 77); weakness and dizziness resulting in admission for sepsis (Tr. 77-78); abdominal and back pain (Tr. 78); bacterial vaginosis (Tr. 78); diabetes (Tr. 78); sleep apnea (Tr. 79); cellulitis and right cephalic vein thrombosis (Tr. 79); and obesity (Tr. 79-80).

### 1.     **Impairments Considered but found Non-Severe**

As it pertains to the conditions the ALJ explicitly considered at Step Two, but determined were not severe (lupus, anxiety, and depression), there is substantial evidence to support the ALJ's determination.  The ALJ determined that the objective medical evidence does not support a finding that lupus was a medically determinable impairment (Tr. 76), let alone a severe impairment, and that, while Plaintiff had been diagnosed with depression, it was "controlled with medication," there was no indication of "any significant frequency of complaint or treatment for any emotional disorder," and Plaintiff herself attributed her difficulties with daily living, social interactions, and concentration, persistence, and pace to her physical impairments. (Tr. 75).

### a.     **Lupus**

For the reasons set forth above in Section IV.B, pp. 15-17, substantial evidence supports the ALJ's finding that lupus is not a medically determinable impairment, and therefore, not a severe impairment.

### b.     **Mental Impairments**

As noted above, while the ALJ considered mental impairments at Step Two, which would include depression and anxiety, the ALJ found that Plaintiff's difficulties were not attributable to any mental impairment such that it was determined the evidence did not support a severe, medically determinable mental impairment. (Tr. 75).  Substantial evidence supports the ALJ's conclusion.  To start, there are several references in the record with regard to diagnoses of

depression or anxiety, but very little in the way of actual treatment specific to depression or anxiety, or even continued complaints of depression or anxiety. Further, as the ALJ points out, any difficulties Plaintiff may have with regard to activities of daily living, social interactions, and concentration, persistence, or pace seem to be attributed to her physical conditions, and there is no history of episodes of decompensation attributable to any mental disorder. (Tr. 75).

In a visit to Dr. Ravi Kanagala on September 23, 2014, he notes "anxiety, depression controlled with meds." (Tr. 529). NP Balado states that she has treated Plaintiff since 2012, and lists anxiety but not depression as a diagnosis. (Tr. 136). It is also unclear how long and to what extent NP Balado treated Plaintiff for anxiety. Plaintiff wrote on her Work History Report that Dr. Genovese referred her to a psychiatrist for her mental state, but there is no evidence in the records that she followed up with this. (Tr. 318). At her July 16, 2014 visit with Patient's First Care, LLC, the records note that Plaintiff complained of depression, but that was not the purpose of her visit. (Tr. 448). Instead, Plaintiff was there for a follow up from her recent hospital visit for a blood clot in her arm. (Tr. 447). Shortly thereafter, at a July 22, 2014 visit with Dr. Beaucoudray, Plaintiff denied the presence of anxiety, depression, or suicidal ideation. (Tr. 479).

Additionally, the records do not support an inability of the Plaintiff to perform basic work activities based upon any purported mental impairment. For example, in Dr. Johnson's March 19, 2014 examination report, Plaintiff was noted as able to perform household activities, and dress and feed herself independently. (Tr. 394). Her appearance was good, she was cooperative, alert, and oriented with normal mood and affect, she followed commands appropriately, and her long and short-term memory were normal. (Tr. 395).

Put simply, there is an absence of substantial evidence in the record to establish that depression and/or anxiety are severe impairments within the meaning of the Regulations. While

several records note depression or anxiety, there is no established treatment history for these diagnoses, longitudinal or otherwise, and there is likewise no evidence of limitations in Plaintiff's ability to do basic work activities as a result of any mental impairment. Thus, the ALJ's decision will not be reversed on this ground

### 2. Impairments Not Explicitly Addressed at Step Two

Plaintiff also argues that the ALJ's decision suffers from a fatal error at Step Two due to the ALJ's failure to address and deem severe the alleged impairments of osteoarthritis, chronic recurrent staph infection, chronic joint pain, and immune suppression due to medication. (R. Doc. 17 at 17).

This argument fails as a matter of law in relation to osteoarthritis, chronic recurrent staph infection, and chronic joint pain, especially considering the ALJ did, in fact, consider the functional limitations imposed by those impairments in her RFC determination and Step Four analysis. Subsequent to her Step Two analysis, the ALJ considered the following: arthritic and thyroid problems (Tr. 77); pain and dysfunction as a result of medically determinable impairments (Tr. 77); lupus (Tr. 77); degenerative disc disease (Tr. 77); rheumatoid arthritis (Tr. 77); obesity (Tr. 77); lumbar radiculopathy as the result of degenerative disc disease (Tr. 77); acute back pain (Tr. 77); weakness and joint pain diagnosed as gout (Tr. 77); heel spur (Tr. 77); weakness and dizziness resulting in admission for sepsis (Tr. 77-78); abdominal and back pain (Tr. 78); bacterial vaginosis (Tr. 78); diabetes (Tr. 78); sleep apnea (Tr. 79); cellulitis and right cephalic vein thrombosis (Tr. 79); and obesity (Tr. 79-80). As a practical matter, these considerations by the ALJ are sufficient to account for osteoarthritis, chronic recurrent staph infection, and chronic joint pain.

Plaintiff also argues that the ALJ failed to consider "immune suppression due to medication" as a severe impairment. (R. Doc. 17 at 17). While the Court notes that the ALJ's decision makes no mention of immune suppression due to medication, for the reasons that follow, the Court also finds that this does not warrant remand. First, any actual diagnosis of "immune suppression due to medication" is questionable as the medical records contain scant evidence of such. Second, there is nothing in the record beyond Plaintiff's own testimony of any limitations caused by her alleged immune deficiency. In order to be a severe impairment, it must be "sufficient to limit significantly an individual's physical or mental ability to do basic work activities." *Henson v. Barnhart*, 373 F. Supp. 2d 674, 682 (E.D. Tex. 2005) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).

Insofar as a diagnosis of "immune suppression due to medication" would be medically determinable, there is simply no evidence at all of any resulting limitations. The only evidence in the record of potential limitations is Plaintiff's testimony at the administrative hearing. In response to a question from her attorney, Plaintiff states that she carries masks in her glove box, puts a mask and gloves on at doctor's appointments, uses anti-bacterial soap, and states that being around "anyone that has anything" can put her in the hospital. (Tr. 117-118). She further states that doctors—without specifying which doctors—tell her not to go anywhere unless she has an appointment. (Tr. 117-118).

There is no support for these statements, however, in the objective medical records. The only mentions of immune deficiency come from providers' notes without any corroborating diagnoses. Dr. Spady (Tr. 19), Dr. Genovese (Tr. 135), and NP Balado (Tr. 136) reference immune deficiencies in various forms, whether it be Dr. Genovese's "immune suppression due to medication" (Tr. 135), NP Balado's "immunocompromised" (Tr. 136), or Dr. Spady's "immune

deficiency" (Tr. 19). The medical records contain Dr. Spady's notes from a single visit with Plaintiff (Tr. 471-477) on September 30, 2013 and a July 9, 2015 letter (Tr. 19) from Dr. Spady. Dr. Spady's letter suggests that Plaintiff is immune deficient (Tr. 19) and should avoid public areas, but there is no corroboration of this statement in his own medical records, or any of the other medical records, for that matter. With regard to Dr. Genovese and NP Balado's statements, the ALJ gave both of those providers little weight (Tr. 80), and for the reasons set forth in Section IV.A. above, the Court finds there was substantial evidence supporting the weight given to the opinions of Dr. Genovese and NP Balado. *See also Young v. Colvin*, 2014 WL 4851565, at *32 (N.D. Tex. Sept. 30, 2014) (addressing the ALJ's Step Two findings and stating, "[e]ven if Plaintiff had raised PTSD and biplor disorder as impairments, however, she cannot show prejudice because the two doctors' opinions that diagnosed Plaintiff with PTSD and bipolar disorder were given little weight by the ALJ."). Dr. Genovese's October 9, 2014 handwritten note concluding Plaintiff "is totally and permanently disabled for any occupation," however, makes no mention of an immune deficiency, but does list (1) osteomyelitis of spine with staph aureus and sepsis currently on IV antibiotics; (2) SLE/rheumatoid arthritis with chronic pain and swelling in multiple joints; (3) deep venous thrombosis – is on chronic blood thinners; (4) diabetes due to steroids; (5) SVT HTN, morbid obesity, hypothyroidism, pernicious anemia; (6) multiple large kidney stones with chronic pain; and (7) chronic anxiety. (Tr. 403). Plaintiff can point to no specific medical records that support the statements in the Medical Reports of Dr. Genovese and NP Balado, and a review of the entire record by the Court suggests there are none.

Despite the few references to an apparent immune deficiency due to medication, such a diagnosis is also notably absent from the hospital records, where one might presume certain precautions would be taken, calling into question the existence and severity of this alleged

impairment. There is no indication that Plaintiff presented concerns of immune deficiencies at her numerous hospital visits, and no indication that the providers therein took any added steps to protect her.  Between a lack of diagnosis of immune deficiency supported by objective medical evidence, and extremely minimal indication of any limitations as a result of such a diagnosis, the ALJ did not err in not addressing "immune suppression due to medication" at Step Two or in her RFC analysis.

This finding is supported by the jurisprudence.  In *Johns v. Colvin*, 2015 WL 1428535, at *14 (N.D. Tex. Mar. 30, 2015), for example, the court was faced with the issue of whether the plaintiff's hypertensive retinopathy should have been considered as a severe condition at Step Two, when the ALJ assessed her RFC, or at the very least been the subject of further development.  In dismissing this argument, the court noted that the plaintiff failed to raise the issue before the ALJ or the Appeals Council, the medical records did not support the diagnosis, and there was no evidence that it affected plaintiff's ability to work.  *Johns*, 2015 WL 1428535 at *14.  Here, Plaintiff did not raise the issue until a passing reference in her brief to the Appeals Council. (Tr. 363).  Plaintiff's disability application was for arthritis, diabetes, and thyroid problems. (Tr. 182).  In her own written remarks from December 8, 2013, Plaintiff notes lupus, diabetes, thyroid, arthritis, glaucoma, bone spurs, bad back, and osteoporosis stage 4 (Tr. 327), but not immune deficiency of any sort, despite an apparent diagnosis "since 2013" according to Dr. Spady. (Tr. 19).  Additionally, like the *Johns* decision and as discussed above, the diagnosis itself is not supported by the objective medical records, nor is there substantial evidence reflecting any resulting limitations in Plaintiff's ability to work.

The case of *Copenhaver v. Astrue*, 2011 WL 891617, at *4-5 (W.D. Tex. Mar. 11, 2011), is also instructive. There, the court found that the ALJ's failure to mention depression in his findings was not reversible error. In so holding, the *Copenhaver* court stated the following:

> Perhaps the ALJ should have included references to depression in his findings, but they were a minor part of Copenhaver's voluminous medical record, and she did not mention them during the hearing. Her medical records show only sporadic references to depression… Copenhaver did not raise the issue of depression before the ALJ as a cause of her disability, and she points to no evidence that these references to depression indicate a condition that would affect her ability to work. The Fifth Circuit does not require an ALJ to mention every medical detail he takes into account when making his determinations, though he must consider all impairments, both severe and nonsevere, in the RFC under 20 C.F.R. §§ 202.1523 at 416.923. In *Hammond v. Barnhart*, 124 F.App'x 847, 851 (5th Cir. 2005), the Court stated, "the ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it, and there is no statutorily or judicially imposed obligation for the ALJ to list explicitly all the evidence he takes into account in making his findings."

2011 WL 891617 at *5. *See also Goodson v. Colvin*, 2014 WL 5100261, at *4-6 (S.D. Tex. Oct. 9, 2014) (finding proper legal standards were applied where plaintiff raised the issue of depression for the first time at the district court, depression was not listed in her application, and no psychologist or psychiatrist diagnosed her with depression, or hospitalize or prescribe medication for depression); *Edwards v. Astrue*, 2011 WL 1103003, at *4 (N.D. Tex. Mar. 24, 2011) (finding ALJ within authority to discount complaints of mental impairments where plaintiff did not seek disability on that ground, only minimal evidence was offered at the hearing, and medical records contained only "three mere mentions" of subjective complaints); *Blaylock v. Astrue*, 2008 WL 3005666, at *5 (W.D. Tex. July 31, 2008) ("…the ALJ was not under an obligation to consider an impairment that was not alleged to be disabling" where plaintiff did not allege disability based upon any mental limitations, nor testify as to any mental limitations at the hearing); *Castro v. Barnhart*, 2006 WL 2290563, at *6-7 (W.D. Tex. Aug. 7, 2006) (finding no reversible error where plaintiff did not include depression as an impairment in her application

and the medical records contained insufficient references concerning a mental impairment, despite testifying at the hearing about being depressed).

In *Leggett v. Chater*, 67 F.3d 558 (5th Cir. 1995), the claimant argued that the ALJ failed to consider his mental impairments and order psychological tests. Noting that the "claimant has the burden of proving his disability," the Fifth Circuit found that the ALJ did not have a duty to investigate because the possible disability was not alleged or "clearly indicated on the record." *Leggett*, 67 F.3d at 566. The Fifth Circuit further held that the claimant could not rely on the record to prevail on the issue because, while there were "some references to Leggett's anxiety, stress, and depression… these comments were isolated and Leggett was not treated for them." *Leggett*, 67 F.3d at 566.

The Court finds the jurisprudence to be well-reasoned and persuasive. Here, likewise, in hundreds of pages of medical evidence, there are only three passing references to immune deficiency. (Tr. 19, 135, 136). Two of those references are from providers given "little weight" by the ALJ. There is no indication in the objective medical evidence of any limitations, work-related or otherwise, as a result of immune deficiency. Plaintiff references immune deficiency in her testimony at the administrative hearing in response to questioning by her attorney, but there is very little support for this in the records, and immune deficiency was not a basis for her application for benefits. Based on these facts, there is insufficient evidence to find that the ALJ erred at Step Two by not considering "immune suppression due to medication" to be a medically determinable impairment, let alone a severe impairment.

Finally, because the ALJ did not find immune deficiency to be a medically determinable impairment, let alone a severe impairment, the ALJ also did not err in failing to address immune deficiency in her RFC analysis. *See Copenhaver*, 2011 891617 at *5 (citing *Masterson v. Barnhart*,

309 F.3d 267, 273 (5th Cir. 2002)) ("The ALJ is only required, however, to include in his analysis 'disabilities supported by evidence and recognized by the ALJ.'… If the ALJ did not recognize her depression, as is the case here, it was not error for him to exclude depression from the RFC determination."). Accordingly, the ALJ's decision will not be reversed for failure to address "immune suppression due to medication" at Step Two or the RFC analysis.

E.     **RFC Assessment and SSR 96-8p**

The next of Plaintiff's arguments to be addressed is that the claims should be remanded because the ALJ's opinion contained two different RFC assessments. In support of her argument, Plaintiff points out that the ALJ's decision first finds that Plaintiff has the RFC to perform "light work," and then later restricts claimant to "a full range of sedentary exertion." (R. Doc. 17 at 6; *Compare* Tr. 76 *with* Tr. 77). Plaintiff argues that, due to the inconsistency in the RFC assessments, the ALJ either (1) rejected medical evidence of treating providers without the analyses under 20 C.F.R. § 404.1527(c) and SSR 96-8p in the instance the ALJ intended to limit claimant to light work, or (2) failed to conduct the SSR 96-8p analysis and several of claimants past relevant jobs would exceed the scope of the RFC assessment in the instance the ALJ intended to limit claimant to the full range of sedentary work. (R. Doc. 17 at 6-7).[7] The Commissioner counters that the ALJ's decision is clear that she intended to assess Plaintiff with an RFC of light work and, even were the ALJ to have intended an RFC assessment of sedentary, such an error would have been harmless because Plaintiff's past relevant work of administrative assistant is a sedentary occupation. (R. Doc. 19 at 4-5).

---

[7] To the extent the arguments raised by Plaintiff in this assignment of error overlap with alleged errors specifically assigned elsewhere, as is the case with Plaintiff's argument regarding the weight given to medical providers and the ALJ's alleged failure to analyze SSR 96-8p, those arguments will be addressed in their respective sections.

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564.

After detailed discussion of the objective medical evidence, the ALJ states, "[g]iven the evidence, the undersigned finds that claimant's conditions do affect her ability to engage in certain activities, but the claimant's overall ability to function is significant and allows for the claimant to engage in work activity at the light level of exertion." (Tr. 79). This conclusion is consistent with the ALJ's caption, which states that "claimant has the residual functional capacity to perform light work." (Tr. 76). Then, after considering the effect Plaintiff's obesity has on the RFC, the ALJ again states that the "evidence does not support that claimant's impairments would prevent her from performing a limited range of light work." (Tr. 80). Based on the numerous references to an RFC of "light work," one of which headlines the section itself, it seems most likely that the reference to "sedentary exertion" (Tr. 77) was a typographical error.

Beyond that finding, it is further significant to note that the first two of the ALJ's hypotheticals to the VE are "light work" and "sedentary work" hypotheticals, respectively. In both, the VE concluded that such an individual could perform Plaintiff's past relevant work as an Administrative Assistant. The VE notes that Plaintiff's past relevant work of Administrative Assistant is classified as sedentary in the Dictionary of Occupational Titles. (Tr. 127). Thus, to the extent the ALJ made any error in classifying Plaintiff's RFC as "light" or "sedentary," such

an error is harmless because, regardless, Plaintiff could perform her past relevant work of Administrative Assistant such that she would not be considered disabled.

In the first, the ALJ asks the VE whether a person could perform any of Plaintiff's past relevant work if that individual "could lift 20 pounds maximum occasionally, 10 pounds frequently. Stand and walk six hours of eight. Sit six hours of eight. Never climb ladders, ropes and scaffolds. Occasionally perform all other postures. Must avoid concentrated exposure to extremes of heat and humidity as well as avoid exposure to hazards such as heights and moving machinery." (Tr. 128). The VE found that individual to be able to perform all of Plaintiff's past relevant work except Supply Clerk, which would include Administrative Assistant, Clerical Worker, Sandwich Maker, and Housekeeper. (Tr. 128). In the second hypothetical, the ALJ asks the VE whether a person could perform any of Plaintiff's past relevant work if that individual had all of the previous limitations, "except now the individual can lift and carry 10 pounds maximum occasionally; lesser amounts more frequently. And stand and walk a total of two hours in an eight hour day." (Tr. 128). In response, the VE stated that such an individual could perform Plaintiff's past relevant work of Administrative Assistant and Title Clerk. (Tr. 129).[8]

Accordingly, even had the ALJ assessed Plaintiff an RFC of sedentary, she still would have concluded that Plaintiff is not disabled because she is able to return to her past relevant work of administrative assistant. Where an ALJ makes an error in the RFC assessment, but such error is harmless, remand is not warranted. In *Wilson v. Colvin*, 2015 WL 864862, at *6 (N.D. Tex. Feb. 27, 2015), for example, the Court held that "any error relating to the ALJ's RFC determination limiting Wilson to light work (as opposed to sedentary work) is harmless as the

---

[8] The ALJ and VE do not address the classification of Title Clerk, but the DOT classifies Title Clerk as 162.267.010, Sedentary, SVP 6.

ALJ, relying on the testimony of the VE, ultimately found that Wilson could perform her past relevant work as a data entry clerk or administrative assistance[sic], which were both sedentary in nature, with the use of either a cane and/or walker." *See also Ross v. Colvin*, 2013 WL 5423980, at *7 (N.D. Tex. Sept. 27, 2013) ("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error."). Here, given the classification of administrative assistant as a sedentary occupation, it is inconceivable that the ALJ would have found Plaintiff unable to return to her past relevant work as administrative assistant had the RFC assessment been sedentary. Thus, Plaintiff's appeal on that ground is denied.

Lastly, Plaintiff argues that the ALJ failed to evaluate her "individual limitations of work related exertion" pursuant to SSR 96-8p, 1996 WL 374184 (July 2, 1996). (R. Doc. 17 at 22). Plaintiff also asserts that the ALJ's failure to evaluate her under SSR 96-8p would have been harmless were it not for the inconsistent RFCs in the ALJ's decision. (R. Doc. 17 at 22). The Commissioner responds with a re-iteration of its argument that there is no inconsistency in the ALJ's RFC assessment, and that the ALJ's specific RFC finding complies with SSR 96-8p. (R. Doc. 19 at 13-14).

First, to the extent Plaintiff's argument rests on any alleged inconsistency in the ALJ's RFC determination, that argument is without merit for the reasons set forth above wherein the Court concluded the RFC assessment is not inconsistent and the ALJ limited Plaintiff to an RFC of "light work, except that she can never climb ladders, ropes and scaffolds. She can occasionally perform all other postural. She must avoid concentrated exposure to extremes of heat and humidity. She must avoid concentrated exposure to hazards such as heights and moving machinery." (Tr. 76).

To the extent Plaintiff has any argument remaining with regard to the ALJ's failure to explicitly address SSR 96-8p, that argument also fails. As the Plaintiff points out, citing *Adams v. Barhnardt*, 2004 WL 632704 (E.D. Pa. Jan. 29, 2004), a failure to individually analyze each work related activity and the claimant's impairments is not reversible error as long as the ALJ explains how he resolves inconsistencies in the record, as well as the reasons for rejecting medical records in conflict with the ultimate RFC determination. (R. Doc. 17 at 22). The Fifth Circuit supports this position. In *Porter v. Barnhart*, 200 F.App'x 317, 319 (5th Cir. 2006), the court found that the ALJ complied with SSR 96-8p by considering all of the medical evidence, the claimant's subjective complaints of pain, and analyzing each alleged impairment in detail. Likewise, in *Gonzales v. Colvin*, 2016 WL 107843, at *7-8 (N.D. Tex. Jan. 11, 2016), the court found that the ALJ had satisfied the SSR 96-8p requirement despite the fact that the ALJ did not perform a function-by-function analysis where "he considered all of the medical records, and no records support a contrary conclusion," and the claimant did "not cite any medical records that the ALJ failed to consider in formulating the RFC or any records or other evidence, other than his own statements, that support a contrary RFC finding." *See also Williams v. Astrue*, 2008 WL 4490792, at *11 (N.D. Tex. Oct. 3, 2008) ("[a]lthough SSR 96-8p requires a function-by-function analysis, if the record reflects the ALJ applied the appropriate standard and considered all the evidence in the record, there is no error").

The ALJ in this case also satisfied this standard. First, the ALJ states his RFC assessment "[a]fter careful consideration of the entire record," and that he "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 76). From an impairment perspective, the ALJ explicitly considered pain, arthritic and thyroid problems, lupus, problems caused by "possible

inappropriate medication dosage and possible substance abuse," degenerative disc disease, rheumatoid arthritis, obesity, lumbar radiculopathy, acute back pain, weakness and joint pain diagnosed as gout, heel spur, weakness and dizziness resulting in admission for possible sepsis, immune regiment treatment, generalized pain, abdominal pain due to adhesions or scar tissue, bacterial vaginosis, diabetes, sleep apnea, cellulitis and thrombosis, bacteremia, diskitis, MRSA. (Tr. 77-80). In reviewing and discussing these diagnoses and impairments, the ALJ necessarily performed an extensive review of the objective medical records. The ALJ also reviewed and discussed the opinions of Dr. Levie Johnson, Dr. Genovese, and NP Balado, and substantial evidence supports the ALJ's weight given to each of these as discussed *supra*. (Tr. 78-80).

Plaintiff argues that the ALJ did not perform a function-by-function analysis, but Dr. Johnson, to which the ALJ gave great weight, did in fact do so in his March 19, 2014 consultative examination. (Tr. 394-399). Dr. Johnson estimated Plaintiff could lift 10 pounds, sit 10 minutes, stand 20 minutes, and walk 70 fee. (Tr. 395). He noted that there was "normal range of motion and strength in the upper extremities and lower extremities bilaterally with no joint tenderness, swelling, redness, or warmth," her heel-to-toe walk was normal, and "the use of an assistive devices [was] not needed upon ambulation." (Tr. 397). Dr. Johnson provided a thorough review of Plaintiff's range of motion, and also reported that Plaintiff's hands and arms function, and her grip, pinch, grasp, handling, and fingering are 5+/5+ bilaterally. (Tr. 397). Finally, Dr. Johnson stated that Plaintiff's pushing, pulling, reaching, crouching, squatting, and stopping were all normal, and she was able to climb on and off the exam table and dress herself independently. (Tr. 398).

In sum, the undersigned concludes that the ALJ properly analyzed the Plaintiff's case under SSR 96-8p, and substantial evidence supports her conclusion. The ALJ's decision will not be overturned on this ground.

## IV.    CONCLUSION

For the reasons given above, **IT IS ORDERED** that the Commissioner's decision be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on August 30, 2017.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**